# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| JUSTIN DEVONTERRIOUS JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:21-cv-00312-RDP-JHE |
| ) | |
| N. NEVE, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Justin Devonterrious Jones has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Constitution or laws of the United States. (Doc. 1). He names the following defendants in the complaint: Correctional Officer Nicholas Neve[1] and Correctional Officer Caleb Lieber. (Doc. 1 at 1, 3). Jones seeks monetary and injunctive relief. (Doc. 1 at 4). The complaint is before the undersigned for a preliminary report and recommendation. *See* 28 U.S.C. § 636(b)(1); *McCarthy v. Bronson*, 500 U.S. 136 (1991). For the reasons to follow, the undersigned recommends the defendants' motion for summary judgment be granted in part and denied in part.

### I. Procedural History

On April 16, 2021, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a Special Report addressing Jones's factual allegations. (Doc. 6). Before the defendants filed their Special Report, Jones moved to amend his complaint. (Doc. 11). On August 10, 2021, the undersigned granted Jones's motion to amend, and ordered him to file the amended complaint

---

[1] Incorrectly identified as Nicholas Neves in the complaint. (Doc. 1, 3).

within 21 days. (Doc. 13). However, Jones did not file an amended complaint within the prescribed time. Therefore, the undersigned ordered the defendants to file their Special Report in response to Jones's allegations in the original complaint. (Doc. 14).

On March 22, 2022, the defendants filed a Special Report accompanied by affidavits and a medical document. (Doc. 23). On March 28, 2022, the undersigned construed the Special Report as a motion for summary judgment and notified Jones that he had 21 days to respond to the motion for summary judgment by filing affidavits or other evidence. (Doc. 24). The undersigned also advised Jones of the consequences of any default or failure to comply with Rule 56. (Doc. 24); *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). That deadline has passed without a response from Jones.

This matter is now before the court on the defendants' motion for summary judgment.

## II. Standard of Review

Because the court has construed the defendants' Special Report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The moving party has the initial burden of showing there are no genuine issues of material fact and he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The plaintiff has the ultimate burden of proving his claims, so the moving party will be entitled to judgment as a matter of law on any claim unless the plaintiff is able to show some evidence supporting each element of that claim. *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations and internal quotations omitted).

In determining whether to grant summary judgment, however, the court will consider any "specific facts" pled in a *pro se* plaintiff's sworn complaint. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than a pleading drafted by a lawyer. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III. Summary Judgment Facts[2]

On January 26, 2021, two segregation inmates were passing out breakfast trays in the Restrictive Housing Unit where Jones was assigned. (Doc. 1 at 5). While Jones's cellmate was talking to one of the inmates, a breakfast tray fell off the tray flap. (Doc. 1 at 5). Correctional Officer Neve approached Jones's cell and sprayed a large amount of chemical agent inside the

---

[2] Based on the foregoing summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party. Factual disputes are addressed in footnote form.

3

cell.[3]  (Doc. 1 at 5).  Correctional Officer Lieber witnessed the incident and closed the tray flap to Jones's cell.[4]  (Doc. 1 at 5).

Neve and Lieber returned to the cell minutes later and removed Jones and his cellmate and escorted them to the shower.  (Doc. 1 at 5).  However, Neve and Lieber denied Jones and his cellmate medical attention or an opportunity to speak with a supervisor.[5]  (Doc. 1 at 5).  While Jones was in the shower, Neve apologized for "'jumping the gun.'"  (Doc. 1 at 5–6).  After Jones and his cellmate finished showering, Neve and Lieber placed them back in their cell.  (Doc. 1 at 6).

On January 27, 2021, Jones submitted a grievance to Warden Robinson and the Investigations & Intelligence Division concerning the incident.  (Doc. 1 at 5).  On February 23, 2021, Neve approached Jones while he was in the shower and told Jones that he spoke with Captain Pickens about the incident and informed Pickens that he did not know what Jones and his cellmate were talking about.  (Doc. 1 at 6).  Jones states that Neve started laughing and walked away.  (Doc. 1 at 6).

---

[3] Neve contends he has no knowledge of the incident.  (Doc. 23-2, Neve Aff. at 1).  He further asserts that he reports his uses of force and is known for not using runners in his assigned dorm.  (Doc. 23-2, Neve Aff. at 1).

[4] Lieber alleges that he has no knowledge of the incident.  (Doc. 23-1, Lieber Aff. at 1).  He states that he reports all uses of force that he is involved in or witnesses.  (Doc. 23-1, Lieber Aff. at 1).  Lieber also contends that he does not use runners in the Restrictive Housing Unit.  (Doc. 23-1, Lieber Aff. at 1).

[5] The defendants have submitted a copy of Jones's Initial Health Record Review while he was assigned to the Restrictive Housing Unit.  (Doc. 23-3 at 1).  The document reflects that medical staff visited Jones daily from January 15, 2021, through January 31, 2021.  (Doc. 23-3 at 1).

**IV. Analysis**

Jones alleges that on January 26, 2021, his cellmate was talking to an inmate passing out breakfast trays when one of the trays fell. (Doc. 1 at 5). Jones states that Neve walked over to his cell and sprayed a large amount of chemical agent inside "without penological justification." (Doc. 1 at 5). Jones asserts that Lieber failed to protect him from Neve's use of excessive force. (Doc. 1 at 5, 6). Jones contends that Neve and Lieber allowed him to shower but denied him medical attention or a body chart. (Doc. 1 at 5). As explained below, the defendants' motion for summary judgment is due to be granted in part and denied in part.

    **A.**     **Official Capacity Claims**

The defendants are entitled to summary judgment to the extent Jones's claims are brought against them in their official capacities for monetary damages. Not only does the Eleventh Amendment bar § 1983 claims against the state or an agency of the state, it also bars § 1983 claims for monetary damages brought against officials and employees of state entities sued in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984). Accordingly, the defendants' motion for summary judgment is due to be granted on Jones's claims against them in their official capacities for damages.

    **B.**     **Excessive Force**

Jones's excessive force allegations against Neve must be analyzed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986). *See Campbell v. Sikes*, 169 F.3d 1353, 1374–75 (11th Cir. 1999). In *Hudson v. McMillian*, the Supreme Court held that in assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

*Hudson*, 503 U.S. at 6–7.  In extending *Whitley* to all cases involving allegations of the use of force by prison officials, the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order.  Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates.  Both situations may require prison officials to act quickly and decisively.  Likewise, both implicate the principle that "'[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that should be considered when examining whether a use of force was excessive.  These factors include: (1) the need for application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by the responsible official; (4) any efforts to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate.  *Whitley*, 475 U.S. at 321.

In applying the foregoing factors to the facts of a particular case, the Supreme Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9–10 (citations omitted).  Thus, to create a genuine issue of material fact, a plaintiff must present evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically.

Jones contends that on January 26, 2021, his cellmate was talking to an inmate passing out breakfast trays when one of the trays fell off the tray flap.  (Doc. 1 at 5).  Jones alleges that Neve

6

approached his cell and sprayed a large amount of chemical agent inside of the cell. (Doc. 1 at 5). Minutes later, Neve and Lieber removed Jones and his cellmate from the cell and escorted them to the shower. (Doc. 1 at 5).

Construing the facts in a light most favorable to Jones, Neve intentionally and maliciously harmed Jones by spraying the chemical agent in his cell because Jones was not posing a threat to Neve or anyone else. On the other hand, Neve merely contends that he has no knowledge of the incident and has "no problem reporting [his] use of force." (Doc. 23-2, Neve Aff. at 1). Neve also states that he does not use runners in the dorm. (Doc. 23-2, Neve Aff. at 1).

It is well established that assessing the credibility of the allegations made by a plaintiff or a defendant is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996). The facts presented by the parties show that a genuine dispute exists between Jones's and Neve's version of the facts in connection with the events that took place on January 26, 2021, and whether Neve used excessive force against Jones by spraying a chemical agent in Jones's cell when he posed no threat. Accordingly, the defendants' motion for summary judgment as to Jones's excessive force claim is due to be denied.

Jones does not allege that he sustained any serious injury as a result of Neve's use of chemical spray. (Doc. 1). However, the extent of injury is but one factor in determining whether an inmate was subjected to excessive force. In *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), the Supreme Court clarified that the purpose of *Hudson* was to "shift the 'core judicial inquiry' from the extent of the injury to the nature of the force—specifically, whether [the force] was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" (quoting *Hudson*, 503 U.S. at 7). In the context of an Eighth Amendment excessive force claim, the Supreme Court has

recognized that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.  If Neve sprayed Jones with any chemical spray when he was not creating a disturbance or causing a threat to Neve or other correctional staff or inmates, Neve's conduct would be without justification and rise to the level of force used maliciously and sadistically to cause harm.  *Hudson*, 503 U.S. at 6–7.

Moreover, a plaintiff claiming violation of his constitutional rights may recover nominal damages even if he suffered no compensable injury.  *See Brooks v. Warden*, 800 F.3d 1295, 1308 (11th Cir. 2015); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages.").  Additionally, the Eleventh Circuit has held that 42 U.S.C. § 1997e(e) does not bar a prisoner from recovering punitive damages for mental or emotional injury in the absence of physical injury.[6] *See Hoever v. Marks*, 993 F.3d 1353, 1362 (11th Cir. 2021) ("[A] plaintiff—at least one alleging a constitutional violation—need not allege a compensable injury to seek punitive damages, so long as he plausibly alleges that the underlying misconduct was willful or malicious.").  Thus, Jones's excessive force claim against Neve is not subject to dismissal even if Jones suffered only minimal injury or no injury at all.

---

[6]  Title 42 U.S.C. § 1997e(e) states:

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

Neve argues that he is entitled to qualified immunity concerning Jones's excessive force claim. (Doc. 23 at 3, 5–8). "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks and citation omitted).

To obtain qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks and citations omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (footnote omitted).

Jones does not dispute that Neve was acting within the scope of his discretionary authority as a correctional officer when he allegedly used excessive force against Jones on January 26, 2021. Because there is a question of fact concerning whether Neve used excessive force, he is not entitled to qualified immunity. Specifically,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether the plaintiff has alleged facts sufficient to survive a . . . motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citation omitted).

Because Jones has alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment excessive force claim, the defendants' motion for summary judgment on Jones's excessive force claim based on qualified immunity is due to be denied.

### C.     Failure to Protect/Intervene

Jones alleges that Lieber witnessed Neve spray the chemical agent in his cell on January 26, 2021, but failed to intervene to protect him. (Doc. 1 at 5, 6). The Eighth Amendment imposes upon institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotation marks and citations omitted). "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).[7] When institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm, a constitutional violation occurs. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s]

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," cannot establish liability on the part of the official. *Id*. at 838. Also, the known risk of injury must be a "strong likelihood, rather than a mere possibility." *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quotation marks and citations omitted).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. And the plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known danger or risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

Additionally, "[p]rison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. However, in order for liability to attach, the officers must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)). The plaintiff has the burden of demonstrating that the defendant was in a position to intervene but did not. *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1331 (11th Cir. 2008)).

Viewing the facts in a light most favorable to Jones, Lieber witnessed Neve spray the chemical agent into Jones's cell on January 26, 2021, but failed to intervene. (Doc. 1 at 5, 6). Like

Neve, Lieber contends that he has no knowledge of the incident and reports all uses of force that he is involved in or witnesses.  (Doc. 23-1, Lieber Aff. at 1).

As stated herein, assessing the credibility of the allegations made by Jones and the defendants is beyond the scope of a trial court's ruling on a motion for summary judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742–43 (11th Cir. 1996).  The facts presented by the parties show that a genuine dispute exists concerning whether Lieber witnessed Neve's alleged use of force and had an opportunity to intervene but failed to do so.  Accordingly, the defendants' motion for summary judgment on Jones's Eighth Amendment failure to protect/intervene claim is due to be denied.

Neither is Lieber entitled to summary judgment on the basis of qualified immunity.  (Doc. 23 at 3, 5–8).  Jones do not dispute that Lieber was also acting within his scope of his discretionary authority as a correctional officer when the incident occurred on January 26, 2021.  *See Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (noting "discretionary authority" includes "all actions of a government official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority'") (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)).  Therefore, to defeat qualified immunity, Jones must establish a genuine issue of material fact regarding whether Lieber violated his constitutional rights.

As stated previously, Jones's version of the events establishes a question of fact whether Lieber violated Jones's constitutional rights by failing to intervene in Neve's alleged use of excessive force.  *See Skrtich v. Thornton,* 280 F.3d 1295, 1300–01 (11th Cir. 2002).  Moreover, the duty of an officer to protect an individual from excessive force by a fellow officer had been clearly established for years prior to Lieber's alleged failure to intervene and protect Jones.  *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1560 (11th Cir. 1993), *as amended,* 14 F.3d 583

(11th Cir. 1994) ("A police officer has a duty to intervene when another officer uses excessive force."); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance."). Because a factual dispute exists as to whether Lieber violated Jones's Eighth Amendment right by failing to intervene, he is not entitled to qualified immunity.

### D. Medical Claims

Jones acknowledges that Neve and Lieber escorted him to the shower after Neve sprayed the chemical agent in his cell on January 26, 2021. (Doc. 1 at 5–6). But he contends Neve and Lieber denied him medical attention or a body chart.[8] (Doc. 1 at 5).

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must present evidence showing that he had a serious medical need, that the defendant acted with deliberate indifference in responding or failing to respond to that need, and that the defendant's wrongful actions caused an injury. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). The conduct of prison officials must run counter to evolving standards

---

[8] Jones also alleges that the defendants denied him an opportunity "to speak with a supervisor" to report the incident. (Doc. 1 at 5). However, elsewhere in the complaint, Jones states that Neve admitted to him that Captain Pickens investigated the incident and questioned Neve about it. (Doc. 1 at 6–7). Regardless, Jones has no right to an investigation and the defendants' failure to allow him to speak to a supervisor on the evening of January 26, 2021, does not state a claim for relief. *See generally Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (finding no constitutional right to an investigation concerning an excessive force claim); *Stringer v. Doe*, 503 F. App'x 888, 890–91 (11th Cir. 2013) (finding no substantive due process right to an internal investigation by law enforcement); *Mallory v. Hetzel*, No. 12-1011, 2016 WL 5030469, at *14 (M.D. Ala. Aug. 26, 2016) (holding inmates have no constitutional right to official investigation).

of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *See Bass v. Sullivan*, 550 F.2d 229, 230–31 (5th Cir. 1977).

Deliberate indifference can be shown in a variety of ways. As the Eleventh Circuit Court of Appeals noted:

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference. Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. A doctor's decision to take an easier and less efficacious course of treatment also constitutes deliberate [indifference]. Additionally, when the need for medical treatment is obvious, medical care that is so cursory as to amount to no treatment at all may constitute deliberate indifference.

*Adams v. Poag*, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (quotation marks and citations omitted).

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. *See Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1187–88 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta Cty.*, 21 F.3d 388, 394 (11th Cir. 1994). Delay in access to medical treatment can violate the Eighth Amendment when it is "tantamount to unnecessary and wanton infliction of pain." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (quotation marks and citations omitted). An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

First, Jones does not allege that he was suffering from a serious medical condition as a result of Neve's use of chemical spray that continued after he showered. (Doc. 1). Second, Jones does not dispute that medical staff visited him in the Restrictive Housing Unit each day for at least

14

five days after the alleged January 26, 2021 incident, and that he had an opportunity to voice any complaints. (Doc. 23-3 at 1). Indeed, Jones does not contend that Neve or Lieber interfered with his ability to notify medical staff of any injury when they may their daily rounds. (Doc. 1). To the extent Jones alleges Neve and Lieber simply delayed his medical treatment by not allowing him to see medical staff immediately after he showered, he has not placed any verifying medical evidence into the record to establish the "detrimental effect" of any delay. *Hill*, 40 F.3d at 1188, *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

Accordingly, the defendants' motion for summary judgment on Jones's medical claim is due to be granted.

### E. Injunctive Relief

In addition to monetary relief, Jones requests disciplinary action and a restraining order against the defendants. (Doc. 1 at 4). While federal courts have the power to order state officials to comply with the Constitution, the court lacks authority to order the ADOC to take disciplinary action against its officers. *See LaMarca v. Turner*, 995 F.2d 1526, 1543 (11th Cir. 1993) (holding that it is an "inappropriate use of the court's equity powers" to require a state prison official to discipline correctional officers).

Furthermore, Jones is not entitled to a restraining order against the defendants. When the incident underlying this action occurred, Jones and the defendants were located at Limestone Correctional Facility. (Doc. 1 at 2). However, Jones is now housed at St. Clair Correctional Facility. (Doc. 25). A prisoner's transfer from a correctional facility generally moots his claim for injunctive relief in a § 1983 action. *See Spears v. Thigpen*, 846 F.2d 1327, 1328 (11th Cir. 1988) (noting that, in this circumstance, there is no longer a "case or controversy" once the inmate has been transferred); *see also Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Past

exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects."). While Jones may be transferred back to Limestone at some point in the future, his return there is too speculative to find that a case or controversy exists. *See Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (holding that a prisoner's claim for injunctive relief was moot since he was no longer being held in the jail under the conditions he complained of and the risk of being sent back to that jail, and suffering from the threatened injury, was too speculative). Thus, Jones is not entitled to injunctive relief.

## V. Recommendation

For these reasons, the undersigned **RECOMMENDS** the defendants' motion for summary judgment be granted in part and denied in part as follows:

1. The defendants' motion for summary judgment on Jones's claims against them in their official capacities for monetary relief be **GRANTED** and the claims be **DISMISSED WITH PREJUDICE;**

2. The defendants' motion for summary judgement on Jones's Eighth Amendment excessive force claim against defendant Neve be **DENIED**;

3. The defendants' motion for summary judgment on Jones's Eighth Amendment failure to protect/intervene claim against defendant Lieber be **DENIED**;

4. The defendants' motion for summary judgment on Jones's Eighth Amendment medical claim be **GRANTED** and the claim be **DISMISSED WITH PREJUDICE**; and

5. Jones's requests for injunctive relief be **DENIED**.

## VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days.** The objecting party must identify

every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence. Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

DONE this 24th day of January, 2023.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE